UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TIFFANY LEVINE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-CV-0901-B |
| | § | |
| METHODIST HOSPITALS OF DALLAS | § | |
| d/b/a METHODIST CHARLTON | § | |
| MEDICAL CENTER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (doc. 17), filed May 18, 2012. For the reasons stated below, Defendant's Motion for Summary Judgment is hereby **GRANTED** in part and **DENIED** in part.

## I.

## BACKGROUND

Plaintiff Tiffany Levine ("Levine" or "Plaintiff"), an African-American woman, filed this suit against Defendant Methodist Hospitals of Dallas ("Methodist" or "Defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, alleging unlawful employment practices on the basis of race, color, and national origin.

In March 2003, Levine was hired by Susan Adair ("Adair"), a Director of Clinical Outcomes

- 1 -

at Methodist, to work as Secretary II[1] in the Clinical Outcomes Management Department ("Department"). Pl.'s Compl. ¶¶ 6, 7. Adair informed Levine on May 4, 2003, that she would be promoted to a Clinical Outcomes Specialist if she obtained her Certified Professional Healthcare Quality ("CPHQ") certification. *Id.* ¶ 7. Levine studied for five months, but thirteen days before the exam, Adair informed her no position was available. *Id.* ¶ 9. Afterwards, Levine returned to college to earn her Bachelor of Business Administration in management while continuing to work at Methodist as a Secretary II. *Id.*

In November 2005, Adair received a resume from Deena Samuel ("Samuel"), a career college student, for a Clinical Outcomes Coordinator position. *Id.* ¶ 10. Adair asked Levine for feedback on Samuel's resume, who replied that Samuel was not qualified for the job because she had no prior quality control experience. *Id.* Despite her lack of experience, Samuel was hired as a Clinical Outcomes Coordinator because, as Adair noted, Samuel had family members with a medical background. *Id.* ¶ 10. Later, in August 2006, Levine alleges that Adair slapped her hand for turning a page during a department staff meeting. *Id.* ¶ 11.

In January 2007, Adair asked Levine for assistance in revising the job description for Secretary II. *Id.* ¶ 11. Levine replied that the title should be changed to Clinical Outcomes Coordinator and that she should be paid as much as Coordinators.[2] *Id.* Levine alleges that Adair became angry and yelled, "If you think I am going to give your black ass one red cent, you have another thing coming," which caused Levine to immediately leave the office. *Id.* ¶ 12. In October

---

[1] The Secretary II position was responsible for taking meeting minutes and providing administrative support to the quality management, risk management, and infection control departments. Pl.'s App., Levine Dep. 59:22-60:01, March 29, 2012.

[2] Coordinators have additional responsibilities that include data abstraction, chart review, updating CMS measures and reappointment profiles, and coordinating committee meetings. *Id.* at 107:03, 129:08-23.

2007, Levine applied for the Clinical Outcomes Coordinator position, but Adair denied her application, citing a lack of clinical experience despite the fact that Levine was a Certified Nurse Assistant with four years of practical experience. *Id.* ¶ 13. When Levine noted this to Adair, Adair responded, "Yes you have a four year degree but it is a Bachelor of Arts . . . not a Bachelor of Science." *Id.* In November 2007, after the Secretary II position was eliminated, Adair promoted Levine to a Clinical Data Abstractor with an increase in pay. Pl.'s App., Levine Dep. 112:22-113:05, March 29, 2012 ("Levine Dep.").

In September 2008, Adair approached Levine for an assignment, but Levine informed Adair that she was leaving early because she had school. Pl.'s Compl. ¶ 14.The next day, Adair told Levine that she needed to be seated at her desk by 8:15 a.m. for work every day. *Id.* Levine alleges that other non-African-American employees were never confronted by Adair, even though they arrived and left at various times. *Id.* ¶ 15.  In January 2009, Levine was written up for "inserting her opinion into an argument" that began between co-workers Donna Bacchus and Martha Ballance. *Id.* ¶ 18. Levine refused to sign the disciplinary form, instead contending that she only overheard the argument when she went to the printer. *Id.* ¶ 19. Later that year, Levine was denied a bonus because she had been written up, while Martha Ballance, who was also written up due to the argument, was given a bonus. Levine Dep. 170:5-172:21. Under Methodist's policy, an individual who was written up during the year cannot receive a bonus. Def.'s App. in Supp. of Mot. for Summ. J., Ex. F-1. Further, Levine alleges that because she was written up for the argument, she was not given an interview for transfer positions. Levine Dep. 137:15-138:9.

On January 6, 2009, Adair emailed all of the employees in the department and asked that they mark their calendars for a meeting. Levine Dep. 121:14-16. Levine attended the meeting with

Donna Bacchas and Katrina McCullar, two other African-American women. Levine Dep. 121:18-22. After the meeting, Adair called the three women "divisive" for attending the meeting together. Pl.'s Compl. ¶ 20. The next day, Levine was called into a meeting with Nancy Wingler, Adair, Suzanne Sims, and the OR Director, where Levine was disciplined because she broke the Commitment to Co-Worker standard by leaving the office to attend the meeting without notifying Adair. *Id.* Levine alleges that the meeting was on the calendar and asked why she was treated differently than her non-African American co-workers. *Id.*

In November 2009, Adair announced to Levine, in front of her co-workers in a staff meeting, that she would perform Levine's mid-annual evaluation that day. *Id.* ¶ 26. Although mid-annual evaluations are not against Methodist's policy, Methodist did not regularly conduct such evaluations. Levine Dep. 153:1-157:14. Further, according to an HR representative, mid-annual evaluations were never carried out at Methodist. Pl.'s Compl. ¶ 27. In December 2009, Plaintiff attempted to file a grievance with HR, but was told she could not file a grievance unless she was no longer employed with Methodist. Levine Dep. 163:15-163:17.

In January 2010, Adair resigned from her position. *Id.* ¶ 30. The next month, Levine was informed by Linda Miller, Adair's interim replacement, that before resigning Adair placed Levine on a performance improvement plan ("PIP"). *Id.* ¶ 31. Although Methodist requires that employees be given notice before they are placed on PIP, Levine was not aware of her PIP status. *Id.* In November 2009, Levine had applied for transfer to four open positions within Methodist, but was not given any interviews. *Id.* ¶ 25. Plaintiff contends that if an individual was not written up for six months, then that individual would be interviewed if her qualifications aligned with the position. Levine Dep.

135:20-141:25. Levine alleges that because she was on PIP, she was not granted any transfer interviews. *Id.* ¶ 25. Later that year, in March 2010, Levine and a co-worker were working together on a presentation when Lisa Mallinson, a Clinical Outcomes Coordinator, remarked, "we will have to tighten the noose around your [Levine's] neck." *Id.* ¶ 32.

After returning from vacation in July 2010, Levine was asked to attend a meeting with her supervisor, Justine Bizette. *Id.* ¶ 35. At the meeting, Levine was asked to take on the additional task of stroke measures after Katrina McCullar, a registered nurse, was fired. *Id.* ¶¶ 35-36. Levine was given the weekend to make a decision. *Id.* Levine then inquired as to why she was not compensated for that additional work, even as she had performed many of those duties since 2006. *Id.* Levine subsequently resigned on July 19, 2010. *Id.* ¶ 36.

Levine filed this lawsuit on April 29, 2011, claiming that Methodist discriminated against her on the basis of race in violation of 42 U.S.C. § 2000e and 42 U.S.C. § 1981. On May 18, 2012, Defendant filed a Motion for Summary Judgment in which Methodist argues that Levine failed to establish a *prima facie* case for racial discrimination because there is no evidence to establish she was subjected to an unfavorable personnel action and no evidence that Methodist gave preferential treatment outside the protected class. Def.'s Mot. for Summ. J. 4. Methodist also contends that its actions concerning the Plaintiff's employment were legitimate and non-discriminatory because: (1) there is no evidence that conditions of her employment were a pretext for race discrimination; (2) there is no evidence that any of its polices had an adverse or disparate impact; (3) there is no evidence of constructive discharge; and (4) there is no evidence that Methodist acted with malice or conscious indifference. Def.'s Mot. for Summ. J. 4. Defendant further argues that the Plaintiff

cannot establish the third and fourth element of a *prima facie* case for her hostile work environment claim. Def.'s Mot. for Summ. J. 4. Plaintiff filed a Response on June 8, 2012. The Motion being fully briefed and ripe for consideration, the Court will now address the merits of Methodist's claims.

## II.

## LEGAL STANDARDS

A.      *Summary Judgment Standard*

The purpose of a summary judgment is "to enable a party who believes [that] there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id*. When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's

essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075.  Nevertheless, a non-movant may not simply rely on the Court to sift through the record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Moreover, the evidence the non-movant does provide must raise more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be such that a jury could reasonably base a verdict in the non-movant's favor. *Anderson*, 477 U.S. at 248. If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

B.    *Racial Discrimination Standard*

Title VII provides that "[i]t shall be an unlawful employment practice for an employer—(1) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To establish a *prima facie* case of race discrimination, the plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the position held; (3)

- 7 -

she was subjected to adverse employment action; and (4) defendant gave preferential treatment to employees outside the protected class, or in the case of discharge, she was replaced by someone outside the protected class. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). The plaintiff can prove discrimination through either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). When there is no direct evidence of discrimination, the Court applies the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000); *McCoy*, 492 F.3d at 556. Under the burden-shifting analysis, the plaintiff has the initial burden to come forward with evidence establishing a *prima facie* case of discrimination. *Reeves*, 530 U.S. at 142. If the plaintiff makes presents a *prima facie* case, the burden shifts to the defendant to articulate legitimate, non-discriminatory reason for its employment action, though the employer's burden is "one of production, not persuasion, and involves no credibility assessment." *McCoy*, 492 F.3d at 556-57. If the employer meets its burden of production, the presumption of discrimination is eliminated. *Id.* The burden then shifts to the plaintiff to prove that the employer's proffered reasons are not true, but are instead a pretext for discrimination. *Id.*

### III.

### ANALYSIS

Levine claims that Methodist discriminated against her in violation of 42 U.S.C. § 2000e and 42 U.S.C. § 1981. Levine has alleged that the following discriminatory acts occurred:

(1)     Adair told Levine, "if you think I'm going to pay your black ass one red cent, you have another thing coming";

| | |
|---|---|
| (2) | Adair slapped Levine's hand in a meeting; |
| (3) | Adair called Levine "divisive" because she attended a meeting with two other African-American women; |
| (4) | Levine was written up for not notifying Adair when she left the building to attend a scheduled meeting and taking restroom breaks because the only restrooms were located outside the building; |
| (5) | Adair wrote Levine up because of an argument between two other co-workers; |
| (6) | Adair blocked Levine for job transfers within the Methodist system because of the write-ups; |
| (7) | Levine performed the same duties as Coordinators, but was not paid equally; |
| (8) | Adair wanted to give Levine a mid-year evaluation, when annual evaluations were standard; |
| (9) | Lisa Mallinson, a coordinator, threatened to put a noose around Levine's neck; |
| (10) | Levine was not allowed to file a grievance because she was still an employee of Methodist; |
| (11) | Levine was not given a bonus when she was written up, but her co-worker who was also written up for the same incident was given bonus; |
| (12) | Levine was placed on a performance improvement plan ("PIP") without Levine's knowledge and without merit; and |
| (13) | Levine was forced to take on stroke measure duties. |

Pl.'s Resp. to Def.'s Mot. for Summ. J. 9-11.

In its Motion for Summary Judgment, Methodist argues that Levine does not have sufficient evidence to establish a *prima facie* discrimination or hostile work environment claim. Def.'s Mot. for Summ. J. 4. Methodist also argues that even if Levine were to satisfy her *prima facie* case for race discrimination, she has failed to show either that Methodist's policies were illegitimate or discriminatory or that her resignation was a constructive discharge. Def.'s Mot. for Summ. J. 4. Moreover, Defendant argues that there is not sufficient evidence to show the employer acted with malice or conscious indifference. Def.'s Mot. for Summ. J. 4. The Court will now address these arguments below.

A.    *Adverse Employment Action*

Methodist argues that Levine has no evidence to prove she was subjected to adverse employment actions, the third element of a *prima facie* case of race discrimination. Adverse actions are "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *McCoy*, 492 F.3d at 560. In contrast, non-adverse employment actions include requiring performance standards, ignoring complaints, filing disciplinary forms, and giving poor performance reviews. *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356, 360 (5th Cir. 2005); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997), *abrogated by Burlington N. and Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

Most of the foregoing alleged actions fail to arise to an adverse employment action because they fall short of being an "ultimate employment action." *Compare Pegram v. Honeywell, Inc.,* 361 F.3d 272, 282 (5th Cir. 2004) (finding that termination of the plaintiff was sufficient adverse employment action), *with Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (holding that sole denial of lateral transfers does not constitute an ultimate employment action), *and Simmons v. Cadence Design Sys., Inc.*, No. 3:05-CV-1921-K, 2007 WL 4104373, at *9 (N.D. Tex. Nov. 16, 2007) (noting that differential management, unwarranted job performance scrutiny, performance requirement standards, and ignoring complaints of disparate treatment are not adverse employment actions). Consequently, the Court finds that no reasonable jury could find that the alleged acts 1, 2, 3, 8, 9, and 10 are ultimate employment decisions. Because they are not "ultimate employment decisions" they cannot constitute an adverse employment decision. The remaining claims 4, 5, 6, 7, 11, 12, and 13 will be addressed below.[3]

---

[3] To establish the fourth element of prima facie case for race discrimination, the plaintiff must produce enough evidence to show that similarly situated employees were treated differently. *Lee*

B.      *Legitimate and Non-Discriminatory Reasons Supporting Plaintiff's Treatment*

Methodist argues that, even if Plaintiff were to establish a *prima facie* case of discrimination, there is no evidence to show Defendant's reasons for its actions concerning the terms and conditions of Levin's employment were a pretext for race discrimination. Def.'s Br. 13. If an employee establishes a *prima facie* case of discrimination, the employer may offer evidence to show legitimate, non-discriminatory reasons for its decisions. *Patrick v. Ridge*, 394 F.3d 311, 316 (5th Cir. 2004); *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 274 (5th Cir. 2006). If the employer is able to articulate a legitimate, non-discriminatory reason, the employee then must show that the proffered reason is merely a pretext for discrimination. *Reeves*, 530 U.S. at 148; *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981); *McCoy*, 492 F.3d at 556–57; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994). To demonstrate that the proffered reason is pretextual, the employee must either establish that the proffered reasons are factually baseless, not the actual motivation, or insufficient to motivate the treatment. *McCoy*, 492 F.3d at 557. She can also show that similarly situated employees who also failed to meet the legitimate expectations were treated more favorably. *Id.* The Court will now apply the foregoing framework to address Defendant's remaining claims 4, 5, 6, 7, 11, 12, and 13 referenced above.

i.      Disciplinary Action Regarding Co-Workers' Argument

In response to Plaintiff's argument that she was neither promoted nor transferred, Defendant contends that Levine was promoted to a Clinical Data Abstractor and it is company policy that an

---

*v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009). Defendant argues, in one sentence, that the Plaintiff has no evidence to establish that Methodist gave preferential treatment to employees outside the protected class. Def.'s Mot. for Summ. J. 2. In assessing each alleged discriminatory act separately, the Court will determine whether Plaintiff has established a *prima facie* case.

employee cannot transfer if she is on a PIP or has been written-up. Def.'s Mot. for Summ. J. 9-12. However, Levine alleges that, in fact, she was not promoted because her Secretary position was simply renamed Clinical Data Abstractor. Levine Dep. 112:7-113:7. Further, Levine argues that she was written up for frivolous or false matters, which consequently did not allow her to transfer. Pl.'s Reply to Def's Mot. for Summ. J. 13. Levine was first given a written disciplinary form on January 1, 2009, because she "inserted herself into" an argument between two co-workers, thereby breaching the company's "Commitment to Co-Workers" policy. Def.'s App. Ex. B, at 1. However, Levine refused to sign the disciplinary form because she alleges the reasons supporting the disciplinary actions were falsified. Pl.'s Compl. ¶ 19. Even if Defendant were mistaken in its determination that Levine's conduct violated Methodist's policies, such an error does not alone establish that Defendant's proffered reason is pretextual. *See Dismuke v. City of Indianola*, 32 F. App'x 126 (5th Cir. 2002)*; Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). An employer is not merely liable for an erroneous decision; rather, that decision must be made with a discriminatory motive. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408-09 (5th Cir.1999); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Accordingly, the Court finds that Levine has failed to show a genuine issue of fact because she has presented no evidence that Defendant's ultimate disciplinary action was anything other than legitimate and in accordance with company policy. Therefore, no reasonable juror could infer that Methodist acted with a discriminatory motive.

      ii.    <u>Disciplinary Action Regarding Meeting Attendance</u>

Two days after the incident between the two co-workers, Levine was, once again, written up because she failed to notify her supervisor when she attended an educational program. Def.'s App. Ex. B, at 2. Methodist argues that Levine breached its "Commitment to Co-Workers" policy, which requires notification or prior approval for leaving the Department. *Id.* Levine, however, contends that every member of the Department received notice of the meeting and was asked to attend; Adair, therefore, was fully aware of the meeting. Pl.'s Compl. ¶ 17. She also argues that the other non-African-American individuals, including Lisa Mallinson and Debbie Cline, were able to leave the office without approval or notification. Pl.'s Compl. ¶ 21.

The Fifth Circuit has noted that even where the plaintiff provides some evidence of pretext, the "overall lack of any evidence of discriminatory intent" is sufficient to defeat plaintiff's claim. *Price v. Fed. Exp. Corp.*, 283 F.3d 715, 724 (5th Cir. 2002); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 372–73 (5th Cir. 2000); *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000). Summary judgment is appropriate "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. Levine alleged that other non-African-American employees who attended the meeting were not written up; however, she has failed to proffer any evidence that the non-African-American employees failed to notify their supervisors that they were leaving the Department for the meeting. Defendant has claimed that Levine was written up not for having attended the meeting, but rather for failing to notify her supervisor that she was leaving the office. Def.'s App. Ex. B, at 2. Furthermore, Levine went to the meeting with two other African American women; however, there is no evidence that either women

was written up for attending the meeting. Pl.'s Compl. ¶ 20. Methodist has shown a legitimate reason for Levine's write-up, and Levine has failed to show that Methodist's proffered reason for the write-up was untrue or bore a discriminatory motive. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004) (finding that the plaintiff failed to show any evidence that the defendant relied on impermissible criteria when making the employment decision); *Swanson v. Gen. Servs Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). Accordingly, the Court finds that the Plaintiff has failed to meet her burden and that no reasonable juror could find that the reasons supporting Defendant's disciplinary actions were pretextual.

iii.   Performance Improvement Plan

Plaintiff was placed on a PIP in December 2009 because Adair claimed that Levine failed to meet performance expectations. Def.'s Mot. 10. Levine, however, alleges she was never presented with the PIP form, and not made aware of her PIP status until she was informed by an HR representative. Pl.'s Compl. ¶ 31. Methodist's policy indicates that when an individual is placed on a PIP, she must be informed as such and sign relevant documentation. Levine Dep. 175:19-177:5. Levine contends that the fact that she did not receive notice is evidence of racial discrimination.

As a threshold matter, "Title VII does not protect employees from the arbitrary employment practice of their employer, only their discriminatory impact." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007). While Methodist has not offered any evidence as to why Adair did not inform Levine that she had been placed on a PIP, Methodist's "failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees." *See id.* Although Levine has shown that her PIP status affected

- 14 -

her ability to transfer, she has failed to present any evidence that other non-African-American employees placed on a PIP were informed about the incident. Without evidence showing that other non-African-American employees placed on PIP were treated differently, Levine has failed to raise an inference of discrimination. Because Levine has not offered evidence that would allow a reasonable juror to find that Methodist's failure to follow its own policy was discriminatory, the Court finds that Plaintiff has failed to satisfy her burden for this action.

      iv.    <u>Compensation</u>

Levine argues that even though she performed the same job duties as the Coordinators, she was not paid equally. Levine, however, defeats this contention with her own deposition testimony. There, she conceded that she was not responsible for committee meetings, a duty required of coordinators. Levine Dep. 132:9-10. Because Levine cannot establish that she was similarly situated with other employees, namely the Coordinators, she will be unable to show how their salary difference is preferential. Moreover, because Levine was given a pay increase after taking on the role of Clinical Data Abstractor, she cannot establish an adverse employment action. *See* Levine Dep. 112:19-113:05. The Court is not persuaded that a pay increase can be deemed "adverse" to Levine's interest. *See* Black's Law Dictionary (9th ed. 2009) (defining adverse to mean: "1. Against; opposed (to). 2. Having an opposing or contrary interest, concern, or position. 3. Contrary (to) or in opposition (to). 4. hostile").

Finally, assuming, *arguendo*, that these facts establish a *prima facie* racial discrimination claim, Levine's fewer responsibilities establishes a legitimate, non-discriminatory reason for the difference in her salary relative to coordinators. Consequently, Levine has also failed to rebut Methodists's

motive as pretextual. *See Roberson*, 373 F.3d at 651. Accordingly, Defendant has failed to show how her difference in compensation raises a general issue of material fact pursuant to her racial discrimination claim.

v.      Stroke Measures

Methodist argues that the reason Levine was given the stroke measures was because McCullar, another staff member, was fired, and tasks were variously distributed within the Department. Def.'s Mot. 12. Levine alleges that she was discriminated against both because she was not trained to take strokes and because she was not included in the redistribution discussion. Levine Dep. 190:1-21. McCullar's tasks, however, were redistributed to everyone within the Department, and there is no evidence that Levine was given a disproportionate number of tasks. Levine has also offered no evidence to show Defendant's explanation was pretextual or that the other employees were treated more favorably when Methodist distributed McCullar's tasks. *Id.* at 189:15-25. Accordingly, the Court finds that the Plaintiff failed to establish that Methodist's reason for giving her additional tasks is pretextual.

vii.    Bonus Policy

Methodist argues that Levine was not discriminated against when she was not paid a bonus in 2009 because Methodist's Team Share Program only allowed eligible employees, or those who had not received a written warning or higher, to be given a bonus. Def.'s Mot. 10. Levine claims that both she and Martha Balance were written up in 2009; however, Ballance, who is not African-American, received a bonus in 2009 while Levine did not. Levine Dep. 170:11-15. Methodist has failed to explain why the bonus policy was not applied uniformly. Therefore, the record indicates that

Methodist did not apply its bonus policy as written and a reasonable juror could find that it was applied in a discriminatory manner. Accordingly, the Court finds that the Defendant failed to meet its burden to show a legitimate, non-discriminatory reason for its treatment of the Plaintiff in regards to the bonus policy, and thus the Court finds that there is a genuine issue of material fact.

Accordingly, based on the evidence presented, the Court finds that Plaintiff's Title VII claim of race discrimination may survive with regard to her complaint that she was discriminated against when she failed to receive a bonus in 2009. Defendant's Motion for Summary Judgment, with regard to Plaintiff's Title VII claim, is therefore **DENIED** as to the factual issue raised by her failure to receive a bonus. However, the Court finds that Plaintiff has failed to demonstrate that any of other actions listed in her complaint raise an inference of racial discrimination.

C.     *Section 1981*

Plaintiff's "claims brought pursuant to Title VII and § 1981 are 'governed by the same evidentiary framework,' such that the analyses under both statutes are substantively the same." *Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (quoting *Pegram*, 361 F.3d at 281 n.7); *Deffenbaugh–Williams v. Wal–Mart Stores, Inc.*, 156 F.3d 581, 587 (5th Cir. 1998); *Ivy v. Oxford Mun. Separate Sch. Dist.*, 799 F. Supp. 2d 697, 699 (N.D. Miss. 2011). Accordingly, because the Court determined that Levine's Title VII claim with regard to the bonus she failed to receive passes the summary judgment threshold, Defendant's Motion for Summary Judgment with regard to Plaintiff's Section 1981 claim is hereby **DENIED**.

D.     *Hostile Work Environment*

- 17 -

Levine alleges that she was subjected to a hostile work environment because of her race. Pl.'s Resp. 12. If a hostile work environment is created by "a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee" must establish that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected classification; and (4) the harassment complained of affected a term, condition, or privilege of employment. *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Harassment based on race must be "sufficiently severe or pervasive . . . and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). Isolated incidents, however, are not sufficient to amount to discriminatory charges. *Faragher*, 524 U.S. at 788; *Hockman v. Westward Comm., LLC*, 407 F.3d 317, 328 (5th Cir. 2004). The court looks at the totality of the circumstances to determine whether a workplace constitutes a hostile work environment. *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596 (5th Cir. 1995). Under the totality-of-circumstances test, the court looks at the following factors: "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez*, 670 F.3d at 651; *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez*, 670 F.3d at 651 (quoting *Faragher*, 524 U.S. at 788).

In totality, the Plaintiff's allegations do not constitute acts sufficient to support her hostile work environment claim. Although the two statements made by Adair and Mallinson were unacceptable and offensive, they were isolated events made by two different individuals with years apart, rather than a stream of abusive statements. *See Vallecillo v. U.S. Dept. of Hous. & Urban Dev.*, 155 F. App'x 764, 767 (5th Cir. 2005) (holding that two statements made to the plaintiff, even if racially offensive, were not severe or pervasive enough to constitute a hostile work environment); *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 328 (5th Cir. 2004). Further, other facts alleged by the Plaintiff fail under the totality-of-the-circumstances test because they do not portray an "abusive" work environment. *See Siddiqui v. AutoZone W., Inc.*, 731 F. Supp. 2d 639, 648 (N.D. Tex. 2010); *Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996). Accordingly, Methodist's Summary Judgment Motion as to Levine's hostile work environment claim is hereby **GRANTED**.

E.     *Constructive Discharge*

To establish a constructive discharge, a plaintiff must establish that her working conditions became "so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). The plaintiff must show both an unlawful predicate act, such as violation of Title VII, as well as aggravating circumstances. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001); *Landgraf v. USI Film Products*, 968 F.2d 427, 429-30 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994); *Boze v. Branstetter*, 912 F.2d 801, 805 (5th Cir. 1990). Levine argues that she resigned because she was denied transfer opportunities, treated adversely at work, and was forced to take on stroke tasks after McCullar was fired. Even assuming, *arguendo*, she has met her *prima facie* claim of race discrimination, Levine has failed to show evidence

- 19 -

of an aggravating circumstance that raises a genuine issue of fact or shows that a reasonable employee

in Levine's position would have felt compelled to resign. *See Brown*, 237 F.3d at 566 (holding that

since the plaintiff was not badgered or harassed to encourage his resignation, there were no

aggravating circumstances). Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's

constructive discharge claim is hereby **GRANTED**.

F.     *Disparate Impact*

To establish a *prima facie* case of disparate impact, the plaintiff must show that a "facially

neutral employment" standard or policy operates "more harshly on one group than another." *Johnson*

*v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1367 (5th Cir. 1992); *Carpenter v. Steven F. Austin State Univ.*,

706 F.2d 608, 621 (5th Cir. 1983). The plaintiff must establish that a specific practice or set of

practices resulted in a significant disparity between groups. *Johnson*, 965 F.2d at 1367. The employee

must first identify the specific employment practice challenged, and then show a statistical disparity.

*Watson v. Ft. Worth Wards Cove Packing, Inc. v. Atonio*, 490 U.S. 642, 656 (1989), *superseded by*

*statute on other grounds*, 42 U.S.C. § 2000e–2(k).

Levine has failed to identify any practice or procedure that resulted in a statistical disparity

adversely affect the protected class that raises a genuine issue of material fact. Her claim, then, seems

wholly without merit. Accordingly, Methodist's Motion for Summary Judgment with regard to

Levine's claim of disparate impact is hereby **GRANTED**.

G.     *Malice or Reckless Indifference*

Defendant contends that it is entitled to summary judgment on Plaintiff's request for

exemplary damages because there is no evidence that Methodist discriminated against Levine under

the perceived risk that she would violate federal law. Def.'s Mot. for Summ. J. 19. Under the Civil Rights Act of 1991, plaintiffs can recover punitive damages under a Title VII claim. 42 U.S.C. §2000e. Punitive damages are permissible when the employer engaged in intentional discrimination and acted "with malice or with reckless indifference to the federally protected rights" of the employee. 42 U.S.C. § 1981a(b)(1); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999); *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 187 (5th Cir. 2012). The terms "malice" and "reckless indifference" do no relate to the employer's awareness that it is engaging in discrimination, but rather the employer's knowledge that it may be acting in violation of federal law. *Kolstad*, 527 U.S. at 535; *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 281 (5th Cir. 1999); *E.E.O.C. v. Premier Operator Services, Inc.*, 113 F. Supp. 2d 1066, 1077 (N.D. Tex. 2000). Levine has failed to present any evidence that raises a genuine issue of material fact that the Defendant acted with the awareness that it was or may have been violating federal law by discrimination based on race. Accordingly, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's ability to recover exemplary damages against the Defendant.

## IV.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant has failed to meet its burden of demonstrating that no genuine issue of material fact exists as to Plaintiff's claims under Title VII and Section 1981 as to Methodist's refusal to pay her a bonus. Plaintiff, however, has failed to raise a genuine issue of material fact regarding her claims of an adverse or disparate impact, constructive discharge, hostile work environment, or malice or conscious indifference to Plaintiff's federal rights.

Accordingly, Defendant's Motion for Summary Judgment is hereby **GRANTED** as to Plaintiff's

hostile work environment claim, constructive discharge, disparate impact, and exemplary damages,

and **DENIED** as to Plaintiff's claims under Title VII and 42 U.S.C. § 1981.

      **SO ORDERED.**

      **SIGNED** August 27, 2012

                              _____

                              JANE J. BOYLE
                              UNITED STATES DISTRICT JUDGE